

# IN THE
# TENTH COURT OF APPEALS

## No. 10-23-00215-CR

**DONTRIEL ALEXZAE PERRY,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 443rd District Court
Ellis County, Texas
Trial Court No. 47017CR**

## MEMORANDUM OPINION

After a jury trial, Dontriel Perry was convicted of capital murder and sentenced to life in prison without parole. In three issues on appeal, Perry challenges the sufficiency of the evidence, the trial court's exclusion of a witness's prior consistent statement, and the trial court's admission of extraneous-offense evidence. We affirm.

## Background

On December 4, 2020, Ashton Collier, Rodney Dent, and Caleb Clark were sitting in Clark's vehicle, which was parked in the street in front of Clark's residence. Several shots were fired into Clark's vehicle from another vehicle. Both Clark and Dent were killed, each sustaining 13 gunshot wounds. Collier escaped from Clark's vehicle and hid behind a tree as the occupants in the other vehicle drove away. After investigation, Perry was arrested for capital murder for the deaths of Dent and Clark. The State's theories at trial were that Perry was guilty either as one of the shooters or as a party to the offense. The jury found Perry guilty of capital murder, and because the State did not seek the death penalty, he was assessed an automatic life sentence without parole. *See* TEX. PENAL CODE ANN. §§ 12.31(a)(2), 19.03(a)(7)(A).

## Sufficiency of the Evidence

Perry argues that the evidence was insufficient to support his capital murder conviction as a principal and as a party to the offense. We disagree.

STANDARD OF REVIEW

The Court of Criminal Appeals has expressed our standard of review of sufficiency issues as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the

appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

DISCUSSION

Relevant here, a person commits the offense of capital murder if he commits murder as defined by Texas Penal Code Section 19.02(b)(1) and murders more than one person during the same criminal transaction. *See* TEX. PENAL CODE ANN. §§ 19.02(b)(1), 19.03(a)(7)(A). Additionally, a person is criminally responsible for an offense committed by the conduct of another if, "acting with the intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *See id.* at § 7.02(a)(2).[1] On appeal, Perry challenges only the sufficiency of the evidence supporting the element of identity because "[t]here is no credible evidence that Perry was present at the time of the murders." To support his position, he attacks the credibility of Collier as the sole eye witness to the offense, as well as law enforcement's refusal to investigate Perry's alibi and the potential culpability of two other individuals.

Motive alone is not sufficient to establish guilt, but it is a significant circumstance indicating guilt. *Nisbett v. State*, 552 S.W.3d 244, 265 (Tex. Crim. App. 2018). "Prior behavior by the defendant toward the deceased can also be relevant to a determination

---

[1] This definition was included in the jury charge. The application paragraph stated:
"Now, if you find from the evidence beyond a reasonable doubt that on or about December 4, 2020, in Ellis County, Texas, the defendant, Dontriel Alexzae Perry, acting alone or as a party as that term has been previously defined, did then and there intentionally or knowingly cause the death of an individual, namely Rodney Dent, by shooting Rodney Dent with a firearm, and did then and there intentionally or knowingly cause the death of another individual, namely Caleb Clark, by shooting Caleb Clark with a firearm, and both murders were committed during the same criminal transaction, then you will find the defendant, Dontriel Alexzae Perry, guilty of capital murder as charged in the indictment."

of whether the defendant murdered the victim." *Id.* at 265-66. Perry had a dispute with his ex-girlfriend, Macy Pallini, about her relationship with Clark that began to intensify in the weeks leading up to the shooting. Perry had been dating Pallini for approximately 2 years when Pallini ended their relationship in November of 2020 and began spending more time with Clark. Over the next three weeks, Perry would contact Pallini "[o]ver a hundred-plus times a day," using burner phone numbers so that Pallini could not successfully block his attempts to contact her. Approximately three weeks before the offense, Perry keyed Pallini's car after observing her in a restaurant with Clark. One week before the shooting, Pallini was asleep at Clark's residence when Perry entered the residence and assaulted her. Pallini described how Perry punched her in her face and threw her phone at her, causing bruising to her eye and cuts to her face. In retaliation for this assault, Clark and Collier drove to Perry's residence where Clark and Perry got into a fistfight. During a phone call the week before the offense, Perry warned Pallini that he would kill Clark if she did not stop spending time with him. Pallini also found it odd that after weeks of Perry consistently contacting her every day, Perry did not attempt to contact her at all on the day of the shooting and for approximately one week after.

Evidence at trial also indicated that Perry's friend, Adrian Sandoval, was angry with Collier on the day of the shooting because Collier had recently flipped him off. In his custodial interview with law enforcement, which was played for the jury, Perry told officers that on the date of the offense, but before the shooting occurred, Adrian drove by

Clark's residence while Perry rode in the front passenger seat. He admitted that they brought a Glock handgun with them in the vehicle and were intending to initiate a fight with Collier. At trial, Collier testified about this incident and stated that it occurred approximately an hour before the shooting. He testified that he was sitting in a car outside of Clark's residence with Dent and another friend when a white Jeep drove by. Perry was shouting at Collier from the front passenger seat to "pull up" before the Jeep drove away. Collier also testified that when the shooting occurred, the individuals who shot Dent and Clark were riding in the same white vehicle, and the person riding in the passenger seat during the shooting was wearing the same jacket that Perry had been wearing during this earlier incident.[2]

Additionally, two witnesses testified that they observed Perry and Adrian loading guns together in Adrian's bedroom shortly before the shooting occurred that were consistent with the type of guns used in the commission of the offense. Joecoby Woodson testified that he observed Perry and Adrian loading guns together, and Perry said that he and Adrian were going to "handle business," so Woodson decided to leave. When law enforcement asked Woodson if Perry said anything about the murders, Woodson responded, "Not about it, but that they were going to go do it." Adrian's brother, Gerardo

---

[2] The State presented evidence at trial that this vehicle was likely not a white Jeep, but a white Mazda Tribute belonging to Adrian's mother, which testimony established resembles a Jeep. Adrian took his mother's white Mazda Tribute to a paint and body shop the day after the shooting occurred, requesting that the vehicle be painted maroon.

Sandoval, testified that on the date of the offense, he saw Perry and Adrian loading an "AR pistol" and a Glock in Adrian's bedroom. Gerardo described Perry as being a little drunk and upset – possibly about "his girl" – and saying he was "going to get this fool or something like that." Gerardo confirmed that Woodson left the residence, but Perry stayed with Adrian. Gerardo left the room to shower, and when he returned, Perry, Adrian, and both guns were gone.

After the shooting, law enforcement located several shell casings from .223-caliber ammunition, which Sergeant Jason York testified is commonly used in an AR-style rifle. Law enforcement also found one unspent .40-caliber bullet and a Glock magazine loaded with .40-caliber ammunition at the scene.[3] During a search of Adrian's bedroom, officers located firearms, ammunition, and firearm components and accessories, including .40-caliber bullets, a .40-caliber magazine, a gun cleaning kit for a .223-caliber rifle, and four brass and aluminum clips capable of holding ten rounds of ammunition suitable for use in an AR-15 rifle. They also found a black ski mask and gloves. At trial, Gerardo testified that a few hours after the shooting occurred, Adrian called him and asked him to give a box of bullets to his friend, Nathan Briones. Briones picked up the box of bullets from Gerardo, which contained .40-caliber and .223-caliber ammunition.

---

[3] The Glock magazine was tested for DNA. The results revealed one major male contributor and at least two minor contributors. Perry was excluded as the major contributor; however, because the minor contributor data did not meet the lab's conclusionary reporting criteria, Perry's DNA could not be compared to the minor contributors' data.

In his interview with police, Perry admitted that he had helped Adrian "hit a lick" in the past and that he had carried the Glock handgun before. He also admitted to seeing the Glock and "a .223" at Adrian's house on the date of the offense, but he denied loading any guns on the date of the offense and denied even knowing how to load a gun. Perry claimed that Adrian dropped him off at home about an hour before the shooting occurred. He told officers that his family could confirm his alibi. Law enforcement did not interview his family about his alibi because, according to the investigator, "family members have a vested interest to lie for one another." The jury also heard evidence that Perry was aware of the facts connecting him to the offense prior to providing his alibi to police. This was likely because when law enforcement executed the search warrant at Adrian's residence a couple of weeks before Perry's arrest and interview, they mistakenly left a copy of the probable cause affidavit at the residence. Perry indicated in his interview that a friend showed him "the paperwork" prior to his arrest.

Perry's argument on appeal focuses on whether there was sufficient proof that Perry was present in the vehicle during the shooting. The jury heard evidence supporting the theory that Perry was present in the vehicle during the shooting, including Collier's testimony that the person riding in the passenger seat was wearing the same jacket that Perry had worn earlier in the day. The jury also heard Gerardo's and Woodson's testimony about Perry loading guns before the shooting and indicating that he was going to "go do it" and "get this fool," in conjunction with Perry's recent threat to Pallini that

he was going to kill Clark if she did not end her relationship with Clark.  Though Perry claimed he had an alibi, the jury heard evidence that Perry had read "the paperwork" prior to providing his alibi that detailed the facts known by law enforcement about the offense.

Regardless, Perry's argument on appeal ignores that a defendant may be held liable as a party even if the defendant is not present at the scene of the crime.  *See Otto v. State*, 95 S.W.3d 282, 284 (Tex. Crim. App. 2003).  In order for someone to be held responsible as a party to an offense, the State must prove conduct constituting an offense plus an act by the defendant done with the intent to promote or assist such conduct.  *Beier v. State*, 687 S.W.2d 2, 3 (Tex. Crim. App. 1985).  Since an agreement between parties to act together in common design can seldom be proven by words, the State often must rely on the actions of the parties, shown by direct or circumstantial evidence, to establish an understanding or a common design to commit the offense.  *Miller v. State*, 83 S.W.3d 308, 314 (Tex. App.—Austin 2002, pet. ref'd).  The jury heard evidence of Perry's motive to harm Clark and of Adrian's motive to harm Collier.  Perry admittedly went by Clark's residence with Adrian about an hour before the shooting and attempted to provoke Collier to fight.  After Collier did not show up to fight, two witnesses testified they observed Perry and Adrian loading guns consistent with the types of guns used in the offense while indicating that they were going to "handle business."  Even if the jury did

not believe that Perry fired a gun or that he rode with Adrian during the shooting, there was sufficient evidence that he was guilty as a party to the offense.

We leave the resolution of conflicts in the evidence to the jury. *Whitaker v. State*, 977 S.W.2d 595, 598 (Tex. Crim. App. 1998). Considering all of the evidence in the light most favorable to the verdict, we find that sufficient evidence was presented for a rational jury to find beyond a reasonable doubt that Perry was guilty of the charged offense.

Accordingly, we overrule Perry's first issue.

### Exclusion of Prior Consistent Statement

In his second issue, Perry claims that the trial court erred by excluding evidence of his mother's prior consistent statement regarding his whereabouts at the time of the shooting. We disagree.

STANDARD OF REVIEW AND APPLICABLE LAW

We review a trial court's decision to exclude evidence for an abuse of discretion. *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018). The trial court's decision to exclude evidence will be upheld as long as it was within the zone of reasonable disagreement. *Id.* If the trial court's ruling is correct on any applicable theory of law, we will not disturb it. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

Generally, a witness's prior statement that is consistent with the witness's trial testimony is inadmissible hearsay. TEX. R. EVID. 613(c). However, a prior consistent statement is admissible to rebut an express or implied charge against the declarant of

recent fabrication or improper influence or motive in his testimony. *See id.* at R. 801(e)(1)(B). To trigger this hearsay exception, (1) the declarant must testify at trial and be subject to cross-examination, (2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony by the opponent, (3) the proponent must offer a prior statement that is consistent with the declarant's challenged in-court testimony, and (4) the prior consistent statement must be made before the supposed motive to falsify arose. *Hammons v. State*, 239 S.W.3d 798, 804 (Tex. Crim. App. 2007) (citing *Tome v. State*, 513 U.S. 150, 156-58, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995)).

DISCUSSION

Perry's mother, Patricia Blackshire, testified at trial as to Perry's whereabouts when the shooting occurred. Blackshire explained that on the evening of the offense, she ordered dinner from Chili's for her husband, Perry, and K.H. (another of Blackshire's sons). She further explained that she did not order any food for herself that evening because she had already eaten at Jack in the Box where she worked. Blackshire testified that Perry was present at her home when she left to pick up the food from Chili's and when she brought it home. Photographs of her receipts from Chili's on the date of the offense, showing that three meals were ordered at 6:36 p.m. and picked up at 7:06 p.m., were admitted into evidence. Police were dispatched to the shooting at approximately 7:39 p.m.

On cross-examination, the State questioned Blackshire about why she did not provide Perry's alibi to the police while this case had been pending for two-and-a-half years. On redirect examination, Blackshire agreed with defense counsel that she had discussed Perry's alibi with a lawyer, Michael Crawford, after Perry was arrested for the offense. Defense counsel called Crawford as a witness and offered Crawford's notes from his consultation with Blackshire as a prior consistent statement to rebut the inference that Blackshire had fabricated her claim of an alibi for Perry. The State objected to the notes as hearsay, arguing that the prior-consistent-statement exception did not apply because cross-examination was limited to Blackshire's failure to inform police of Perry's alibi.[4] The trial court sustained the State's objection and excluded Crawford's consultation notes.

Assuming without deciding that the trial court erred by excluding Crawford's notes, any error in the exclusion is subject to a harm analysis for nonconstitutional error. Tex. R. App. P. 44.2(b); *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). Under this standard, the error must be disregarded unless it affects a defendant's substantial rights. *Id*. An error affects a defendant's substantial rights when the error has a substantial and injurious effect or influence on the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). The error is harmless if it had no effect or only slight effect on the verdict. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). At trial,

---

[4] The State does not make this argument on appeal.

Perry's younger brother, K.H., corroborated Blackshire's testimony that Perry was at home on the night of the offense before the family ordered dinner at approximately 6:30 p.m. Photographs of the Chili's receipts supporting Blackshire's testimony were also admitted into evidence. Additionally, though Crawford did not describe the specific alibi provided by Blackshire during their consultation, he indicated that he took detailed notes regarding alibi-related information when he met with her. Importantly, as discussed above, sufficient evidence was presented for the jury to find Perry guilty as a party to the offense even if Perry was at home with his family when the shooting occurred. Therefore, we cannot say that the error, if any, had a substantial and injurious effect on the jury's verdict. We conclude that any error in excluding Crawford's notes was harmless.

Accordingly, we overrule Perry's second issue.

## Officer Daniel Wiser's Testimony & Body Camera Video

In his third issue, Perry claims that the trial court abused its discretion in admitting the testimony and body camera video of the arresting officer, Officer Daniel Wiser. He argues that the admission of this evidence violated Texas Rules of Evidence 403 and 404(b) and that the error was harmful. *See* TEX. R. EVID. 403, 404(b). We disagree.

WAIVER

"[I]f, on appeal, a defendant claims the trial judge erred in admitting evidence offered by the State, this error must have been preserved by a proper objection and a ruling on that objection." *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003)

(citing *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991)). When the trial court hears a party's objections outside the presence of the jury and rules that the evidence is admissible, the party need not specifically object to the evidence when it is later offered at trial to preserve his claim of error for appeal. *See Thomas v. State*, 408 S.W.3d 877, 881 (Tex. Crim. App. 2013). However, an affirmative statement of "no objection" when the complained-of evidence is offered at trial "will, by itself, serve as an unequivocal indication that a waiver was both intended and understood" unless the record plainly demonstrates that the defendant did not intend, and the trial court did not construe, the "no objection" statement as a waiver. *See id.* at 885-86.

Here, in a hearing outside of the jury's presence, defense counsel notified the trial court that the State had recently provided Officer Wiser's body camera video showing Perry's arrest several weeks after the offense occurred. The video shows Officer Wiser locating Perry in the passenger seat of a parked vehicle, arresting him on his active warrant for the instant offense, and finding a loaded handgun underneath the seat where Perry had been sitting. Defense counsel objected that evidence of Perry's alleged possession of a firearm on an occasion subsequent to the offense date was irrelevant, unfairly prejudicial, and a violation of Texas Rule of Evidence 404 attempting to show Perry's character conformity as "a person habitually known to be armed." *See* TEX. R. EVID. 403, 404(b). Officer Wiser did not testify at the hearing. The State offered the video during the hearing for record purposes only, and the trial court reviewed the video before

ruling on defense counsel's objections. The trial court found the evidence to be relevant, found the probative value of the evidence outweighed any prejudicial effect, and stated that the "Court is going to let this topic be entered into the trial."

Following this hearing, and in the jury's presence, the State called Officer Wiser to testify. Officer Wiser testified without objection that after arresting Perry, he found a loaded handgun underneath the passenger seat where Perry had been sitting. When the State offered a photograph of the handgun that Officer Wiser located under Perry's seat, defense counsel affirmatively stated, "No objection." The trial court repeated, "No objection, [defense counsel]?" and defense counsel confirmed, "No ma'am." Defense counsel also stated that he had "no objection" when the actual handgun found underneath Perry's seat and the complained-of body camera video were offered into evidence. Because defense counsel affirmatively stated that he had no objection to the complained-of evidence, and the record does not plainly indicate that waiver was unintended, Perry has waived this complaint on appeal.

HARMLESS ERROR

Even if Perry did not waive this complaint on appeal, and assuming without deciding that the trial court erred in admitting the complained-of evidence, we find that Perry was not harmed by its admission.

A trial court's erroneous admission of evidence is generally non-constitutional error governed by Texas Rule of Appellate Procedure 44.2(b). TEX. R. APP. P. 44.2(b); *See*

*Gonzales v. State*, 544 S.W.3d 363, 373 (Tex. App.—Waco 2018, no pet.). Under Rule 44.2(b), we disregard all non-constitutional errors that do not have a substantial and injurious effect or influence in determining the jury's verdict. *See id.*; *Rich v. State*, 160 S.W.3d 575, 577 (Tex. Crim. App. 2005). In conducting our harm analysis, we consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error. *Id.* at 577-78.

On appeal, Perry argues that he was harmed by the admission of the evidence because (1) there was insufficient evidence that he was present at the scene of the offense, and (2) there was no evidence that Perry was aware the handgun was underneath his seat. The State did not insinuate that the handgun found during Perry's arrest was affiliated with the murders of Clark and Dent or that it directly linked Perry to the scene of the crime. Defense counsel also established during cross-examination that the gun underneath the seat was a different caliber firearm than those used in the offense. Additionally, there was ample other evidence adduced at trial regarding Perry's association with firearms, including his own interview with law enforcement, which was admitted without objection. Perry admitted to carrying guns on prior occasions while helping Adrian engage in criminal activity and further admitted that he and Adrian

brought a handgun with them during the first drive by Clark's residence an hour before the shooting. Further, the State spent relatively little time developing the evidence that Perry was arrested with a loaded gun under his seat, and this evidence was not a central part of the State's theories at trial. There were no questions or commentary related to this evidence in voir dire, and neither the State nor defense counsel mentioned this evidence in closing. The guilt-innocence jury charge also contained a Rule 404(b) limiting instruction.

Considering the record as a whole, we find that any error in admitting evidence of the loaded handgun found underneath the seat after Perry's arrest was harmless.

Accordingly, we overrule Perry's third issue.

### Conclusion

Having overruled all of Perry's issues on appeal, we affirm the judgment of the trial court.

STEVE SMITH
Justice

Before Chief Justice Gray,
     Justice Johnson, and
     Justice Smith
Affirmed
Opinion delivered and filed September 19, 2024
[CR25]

